**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| ZINETA H., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| | ) |
| v. | )    Case No. 4:24-CV-672-JSD |
| | ) |
| FRANK BISIGNANO, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| | ) |
|     Defendant. | ) |

## <u>MEMORANDUM OPINION</u>

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Frank Bisignano, Commissioner of Social Security[1] (the "Commissioner") denying the application of Plaintiff Zineta H. ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*. The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 4.) For the reasons stated herein, the Court affirms the Commissioner's denial of Plaintiff's application.

### I.    BACKGROUND

On September 11, 2020, Plaintiff applied for DIB, alleging that she had been unable to work since April 27, 2020, due to blindness or low vision, bilateral plantar fascia, gall bladder removal, stomach ulcer, asthma, depression/anxiety, tendon tenderness/tendinosis, and tarsal

---

[1] Frank Bisignano was confirmed as the new Commissioner of Social Security in May 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted, therefore, for Martin O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

tunnel syndrome. (Tr. 221, 266.) Her application was initially denied. (Tr. 102-05.) On May 5, 2021, Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ) (Tr. 110-116.)

ALJ Robin Barber held an initial hearing on October 13, 2021. (Tr. 41.) Plaintiff testified that she elevated her legs approximately 20 times a day. (Tr. 52.) She further explained that that she started experiencing leg swelling in 2018, but she no longer had issues with swelling. (Tr. 48, 51-52.) After Plaintiff and the Vocational Expert ("VE") testified, the ALJ directed counsel to further develop the record, specially regarding the cause of Plaintiff's need to elevate her legs. (Tr. 54, 56.) On April 10, 2023, ALJ Barber conducted a second hearing in light of further record development. (Tr. 61.) At the hearing, Plaintiff testified that: she has constant pain in her right leg; she has pain in her lower back that shoots through her hips, legs, and feet, primarily on the right side (Tr. 71); her family help her with most of the household chores and grocery shopping, but she cooks for herself throughout the day (Tr. 66-67); her back pain requires her to sit and change positions (Tr. 67-69); she can only sit for 10 to 15 minutes at a time (Tr. 70); she can only stand and walk for about 20 minutes at a time, then she must lay down and rest for 30 minutes to 1.5 hours depending on the day (Tr. 69-70); when her right-leg pain is bad, her leg can swell; she has received injections in her back, which have helped the back pain (Tr. 70); and she takes Tylenol for pain and ibuprofen for arthritis (Tr. 71).

The ALJ issued an unfavorable decision on September 22, 2023. (Tr. 12-38.) Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council on November 20, 2023 (Tr. 217-18), but the Appeals Council declined to review the case on March 22, 2024 (Tr. 1-7). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

The Court accepts the facts as set forth in the parties' respective statements of fact and responses. The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

### III.    STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509], or a combination

of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 404.1545(a)(1); *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. 20 C.F.R. § 404.1560(c)(2); *Moore*, 572 F.3d at 523; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## II.     THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that: Plaintiff had not engaged in substantial gainful activity since April 27, 2020; Plaintiff had the severe impairments of bilateral plantar fasciitis, tarsal tunnel syndrome – status post release, mild right hip arthritis/trochanteric bursitis, asthma, and mild degenerative disc disease of the cervical and lumbar spine – status post fusion of C6-C7; and Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 17-19.) The ALJ found that Plaintiff had the RFC to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) except she should never climb ropes but is able to occasionally climb ladders and scaffolds, and frequently climb ramps and stairs. She is able to frequently balance (as defined in the DOT/SCO). She should avoid concentrated exposure to unprotected heights, dangerous machinery and pulmonary irritants.

(Tr. 20.)  At Step Four, the ALJ found that Plaintiff was unable to perform past relevant work at the medium exertional level; and at Step Five, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 28.)

## IV.    DISCUSSION

Plaintiff challenges the ALJ's decision, particularly the RFC, on three grounds: (1) the ALJ failed to properly evaluate medical opinion evidence; (2) the ALJ failed to properly evaluate Plaintiff's pain; and (3) the RFC is not supported by substantial evidence.

### A.   Standard for Judicial Review

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted); *see also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894

(8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## B.  ALJ's Evaluation of Medical Opinion Evidence

Plaintiff contends that the ALJ failed to properly evaluate the medical opinion evidence of state agency doctors and psychologists and Plaintiff's treatment podiatrist, Dr. David Amarnek. (ECF No. 18 at 4-5.) She first argues that the ALJ did not factually support the consistency and supportability factors when analyzing the persuasiveness of the state agency doctors' and psychologists' findings and opinions. (*Id.* at 3-4.) Plaintiff also challenges the ALJ's finding that certain portions of Dr. Amarnek's opinion were not persuasive, including limitations as to leg elevation, time off task, absenteeism, and sitting. (*Id.* at 5-8.) Defendant argues that the ALJ properly evaluated persuasiveness when considering the ALJ's entire opinion and the record as a whole. (ECF No. 21 at 4-15.) For the following reasons, this Court finds that the ALJ properly evaluated the medical opinion evidence.

The ALJ's treatment of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. Under this Regulation, ALJs are to consider all medical opinions equally and evaluate their persuasiveness according to several specific factors – supportability, consistency, the medical source's relationship with the claimant, specialization, and other factors such as the source's understanding of the Social Security Administration's disability policies and their familiarity with other evidence in the claim. 20 C.F.R. § 404.1520c(c). "The first two factors—supportability and consistency—are the most important." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(a)). ALJs must "articulate in [their] determination or decision how

persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. § 404.1520c(b).

i.      *Medical Opinions of State Agency Doctors*

Plaintiff argues that the ALJ failed to factually support the persuasiveness finding related to state agency doctors' administrative medical findings indicating that Plaintiff was capable of medium work with restrictions. (ECF No. 18 at 4.) She contends that the ALJ's only statement as to the supportability and consistency of administrative medical findings was the conclusory statement that the findings were not persuasive, as they were, "neither consistent with the record [n]or supported by the consultants' medical review, as they do not account adequately for the claimant's subjective allegations of pain." (*Id.*; Tr. 28)

The ALJ's consideration of Plaintiff's subjective allegations of pain supported the consistency factor in the ALJ's persuasiveness finding, *see* 20 C.F.R. § 404.1520c(c)(2) (requiring ALJ to consider how consistent a medical opinion is with, inter alia, evidence from other nonmedical sources in the claim), and the ALJ referenced those subjective complaints throughout the opinion (Tr. 20-27), *see Wiese v. Astrue*, 552 F.3d 728, 733-34 (8th Cir. 2009) (the basis of the ALJ' s finding may be "apparent from the opinion's entirety"). Indeed, throughout the opinion, the ALJ extensively described the record, including the medical evidence and Plaintiff's allegations. (Tr. 20-28.) After a thorough review of the record, the ALJ reasoned that the administrative medical finding of a medium RFC was inconsistent with the record, which supported a sedentary RFC (Tr. 21, 23, 27, 28), and was not supported by the consultants' medical review, which was included as part of the record (Tr. 77-80, 87-88, 93-94, 98-99). *See Wiese*, 552 F.3d at 733-34; *Trosper v. Saul*, 2021 WL 1857124, at *6 (E.D. Mo. May 10, 2021) ("When the decision is read in its entirety, instead of only the single paragraph . . . in isolation, it shows the

ALJ properly considered the record evidence as whole when evaluating the supportability and consistency of the opinion."); *see also Pierce v. Kijakazi*, No. 4:20 CV 1426 CDP, 2022 WL 888141, at *5 (E.D. Mo. Mar. 25, 2022) ("The ALJ properly found the opinion evidence from the state-agency physician unpersuasive because later medical records showed [the claimant's] [ ] impairments to be more severe than the limitations the physician assessed."). Thus, the ALJ factually supported the persuasiveness finding as to the state agency doctors' medical opinions. Moreover, there is no apparent injury to Plaintiff as a result of the ALJ's application of a sedentary RFC instead of a medium RFC as supported by the unpersuasive administrative medical findings.

### ii. *Medical Opinions of State Agency Psychologists*

Plaintiff next challenges the ALJ's persuasiveness finding as to the state agency psychologists' opinion that Plaintiff did not have any severe mental health impairments. (ECF No. 18 at 4-5.) Plaintiff contends that the ALJ failed to factually support the finding that the opinions "are entirely consistent with the overall record and are supported by the examiner's observations, the consultants' medical review and even the claimant's own report." (*Id.*; Tr. 19.)

This argument fails, as the ALJ cited specific evidence earlier in the opinion to support the finding that the psychologists' opinions that Plaintiff had a non-severe mental impairment were persuasive. (Tr. 18-19.) For example, in the paragraphs preceding the persuasiveness finding, the ALJ reviewed the frequency and severity of Plaintiff's subjective complaints of anxiety and depression, Plaintiff's treatment records for the same, and findings and observations from the consultative examinations. (*Id.*) Thus, the entire opinion demonstrates that the ALJ based the persuasiveness finding on specific factual evidence, and Plaintiff's argument to the contrary fails. *See Wiese*, 552 F.3d at 733-34; *see also McClure v. Saul*, 2021 WL 3856577, at *7 (E.D. Mo. Aug.

9

30, 2021) ("[20 C.F.R. § 404.1520c] does not require an ALJ to address each and every part of a medical opinion to show that the entire opinion was properly considered.").

> iii.    Medical Opinions of Treating Podiatrist, Dr. Amarnek

Plaintiff also challenges the ALJ's persuasiveness findings as to certain limitations set forth in Dr. Amarnek's opinion, namely limitations as to leg elevation, time off task, absenteeism, and sitting; however, this Court finds that the ALJ specifically addressed each limitation and properly rejected them.[2]

<u>Leg Elevation</u>: The ALJ found that Dr. Amarnek's opinion requiring leg elevation was unsupported by Dr. Amarnek's treatment records and inconsistent with the overall record and Dr. Amarnek's other opinions. (Tr. 25.) The ALJ explained that in Dr. Amarnek's February 2018 report, he did not indicate any need for leg elevation. (Tr. 25, 695.) As further acknowledged by the ALJ, Dr. Amarnek opined on August 25, 2021, that Plaintiff did not need to elevate her legs with prolonged sitting. (Tr. 25, 883.) However, on October 15, 2021, less than two months later, Dr. Amarnek opined that Plaintiff needed to elevate her legs 15 minutes per day, three times per day, because inflammation of soft tissue will cause lower extremity swelling, and extended periods of time standing or sitting may aggravate the condition.[3] (Tr. 25, 950.) The ALJ explained that

---

[2] To the extent that Plaintiff argues that the ALJ erred by evaluating Amarnek's opinion finding-by-finding instead of evaluating the opinion as a whole, this argument fails, as Plaintiff cites no support for this argument; the ALJ is "free to accept some, but not all, of a medical opinion," *see Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022); and the ALJ is not required to "address each and every part of a medical opinion," *see McClure*, 2021 WL 3856577, at *7.

[3] Defendants further detail the timing of Dr. Amarnek's opinions. (ECF No. 21 at 9-10.) Defendants explain that after Dr. Amarnek checked the "no" box indicating no need for leg elevation in August 2021 (Tr. 883 ¶8(i)), Plaintiff's counsel sent a follow up letter to Dr. Amarnek (Tr. 950). The letter incorrectly advised Dr. Amarnek that he had "answered that [the] patient would need to elevate her (leg)s with prolonged sitting," and asked how frequently Plaintiff would need to elevate her legs. (*Id.*) Dr. Amarnek answered with the elevation requirement of 15 minutes at least 3 times per day. (*Id.*) In the follow-up letter, Plaintiff's counsel also stated that Dr. Amarnek had "answered that [Plaintiff] must elevate her leg(s) due to the risk of edema," and requested the

Plaintiff's medical records did not indicate any significant or adverse change in Plaintiff's condition between August and October 2021 to justify the change in Dr. Amarnek's opinion. (Tr. 25.) The ALJ also noted that by March 6, 2023, Dr. Amarnek's treatment notes no longer instructed Plaintiff to elevate her legs (Tr. 26, 2213), and on April 10, 2023, Plaintiff testified that her pain problem was pain, not swelling, and that her right leg would sometimes swell with increased pain (Tr. 70). The ALJ cited many of Dr. Amarnek's treatment notes and examination findings, ranging from September 2021 to March 2023, in which he repeatedly found that Plaintiff did not have edema of the lower extremities, despite her subjective complaints to the contrary, and noted that Plaintiff's swelling had resolved. (Tr. 25, 1143-60.) The ALJ explained that although Dr. Amarnek recommended elevating Plaintiff's legs in some of the treatment records, this recommendation appeared to be temporary in light of the above examination findings, treatment notes, and Plaintiff's testimony. (*Id.*) The ALJ also explained that Dr. Amarnek did not appear to update his notes, as they contained outdated and irrelevant information, and were inconsistent with Plaintiff's complaints. (Tr. 26, 2197-2223.)

Plaintiff argues that: Dr. Amarnek's 2018 opinion is irrelevant to the current claim; the ALJ failed to cite any treatment records to support the persuasiveness finding as to leg elevation; and the medical records demonstrate significant changes in her condition after the August 2021 report. (ECF No. 18 at 5-6.)

This Court disagrees. Considering the ALJ's analysis as discussed above, this Court finds that the ALJ adequately analyzed the persuasiveness of Dr. Amarnek's opinion requiring leg

---

cause of the edema. (*Id.*). Dr. Amarnek indicated that inflammation of soft tissue will cause lower extremity swelling, aggravated by extended periods of sitting and standing. (*Id.*) This Court notes that nothing in Dr. Amarnek's August 2021 opinion seems to indicate lower extremity edema or swelling. *See* Tr. 882-83.

elevation. *See* 20 C.F.R. § 404.1520c. Despite Plaintiff's arguments to the contrary, the ALJ cited Dr. Amarnek's own past opinions and treatment records that were relevant to and inconsistent with his October 2021 opinion requiring leg elevation. (Tr. 20-26.) Additionally, Dr. Amarnek's 2018 opinion was relevant to the ALJ's persuasiveness analysis, as Plaintiff testified that the swelling began in 2018, and the 2018 opinion factors into the consistency of Amarnek's opinion as to leg elevation necessitated by swelling. *See* 20 C.F.R. § 404.1520c(c)(2) (to assess consistency, the ALJ is to compare the medical opinion with "evidence from other medical sources and nonmedical sources in the claim"). The ALJ also permissibly found no significant changes between August and October 2021 based on the medical records as discussed above, and Plaintiff fails to identify any significant change in symptoms or relevant treatment ignored by the ALJ.[4] *See Austin*, 52 F.4th at 729 ("'[I]t is the ALJ's role to resolve conflicts in experts' opinions,' including 'conflicts . . . internal to one expert's opinion.'") (quoting *Clay v. Barnhart*, 417 F.3d 922, 930 (8th Cir. 2005). Thus, the ALJ's finding that Dr. Amarnek's opinion requiring leg elevation was unpersuasive was supported by substantial evidence, *see Biestek*, 139 S. Ct. at 1154, and to the extent that Plaintiff contends the record supported a different conclusion based on the evidence, this Court will not reweigh the evidence, *see Renstrom*, 680 F.3d at 1064.[5]

---

[4] Plaintiff cites medical treatment to her feet and other body parts to demonstrate significant changes in her condition after August 2021. (ECF No. 18 at 5-6.) First, treatments to Plaintiff's other body parts are irrelevant, as her need for leg elevation was specifically related to swelling in her lower extremities. Evidence of her treatment before August 25, 2021, is also irrelevant to the ALJ's conclusion that her condition did not change after that date. The only relevant surgery cited by Plaintiff is a March 2022 operation to her right foot; however, the ALJ reviewed the records from this operation and subsequent treatment, noting that after the operation, Dr. Amarnek's examinations showed no edema or abnormalities, and Plaintiff stopped reporting swelling as a symptom. (Tr. 26, 2196-2221.)

[5] This Court also notes that Plaintiff does not challenge the ALJ's finding that even if Plaintiff needed to elevate her legs three times a day for 15 minutes at a time, she could accomplish this without impact on her ability to work full time. (Tr. 25.)

Time Off Task: The ALJ also found unpersuasive Dr. Amarnek's opinion that Plaintiff's attention and concentration problems would keep her off task greater than 20% of the day, stating that the opinion was not supported by Dr. Amarnek's notes or consistent with the overall record. (Tr. 26.) The ALJ reasoned that: Plaintiff had no medically determinable severe mental impairments – as supported by the state psychologist's opinions – that would be expected to cause such attention and concentration problems; Plaintiff did not take any strong pain medication that would be expected to interfere with her ability to process information; and Plaintiff did not indicate in her functional report that she had problems with memory, completing tasks, concentration, understanding, or following instructions. (Tr. 26, 290.) Earlier in the opinion, the ALJ specifically reviewed medical records regarding Plaintiff's mental health. (Tr. 18-19.)

Plaintiff argues that the ALJ's persuasiveness finding was conclusory, as it did not adequately evaluate supportability and consistency in regard to the time off limitation. Plaintiff further contends that the functional report supports the time off limitation, as she reported the following: she had problems paying attention for more than 1 hour (less when her legs hurt); she could follow written instructions "okay"; she does not handle stress well; and her daily activities were broken up by frequent breaks due to lower extremity pain. (ECF No. 18 at 6-7, citing Tr. 287-88.)

Plaintiff's arguments fail. The ALJ adequately evaluated the consistency factor by discussing: consultative examination findings that Plaintiff's immediate memory was average, recent and past memory were adequate, and attention and concentration were adequate; medical records and Plaintiff's subjective complaints reflecting that she does not have a severe mental impairment or take medication that would impact her ability to concentrate and process information; and Plaintiff's indications in the functional report that she did not have issues with

various cognitive issues (Tr. 18-19, 26). *See* 20 C.F.R. § 404.1520c(c)(2). As to supportability, the ALJ considered that Dr. Amarnek's opinion was not supported by his notes (Tr. 26), which are part of the record, and do not include any consistent reference to cognitive issues. *See* 20 C.F.R. § 404.1520c(c)(1); *see also Eberhardt v. Kijakazi*, No. 4:20-CV-01420-NCC, 2022 WL 612397, at \*4 (E.D. Mo. Mar. 2, 2022) ("In addressing the 'supportability' factor, an ALJ may note that the physician's own treatment notes do not support the physician's opinion) (citing *Starman v. Kijakazi*, No. 2:20-CV-00035-SRC, 2021 WL 4459729, at \*4 (E.D. Mo. Sept. 29, 2021) (listing cases)). Thus, the record adequately supports the ALJ's persuasiveness finding as to the time off task limitation, *see Biestek*, 139 S. Ct. at 1154, and this Court will not reweigh the evidence, *see Renstrom*, 680 F.3d at 1064.

Absenteeism: The ALJ next found unpersuasive Dr. Amarnek's opinion that Plaintiff would miss work two to three days per month as a result of her impairments (specifically, foot pain) and treatment, as such opinion was not supported by Dr. Amarnek's notes nor was it consistent with the record. (Tr. 27.) The ALJ further explained that the degree of pain alleged was not consistent with the overall record, the record did not suggest missing days of work, and Plaintiff's impairments could not reasonably be expected to interfere with her ability to maintain a work routine to such a degree. (*Id.*)

Plaintiff again argues the ALJ's persuasiveness finding was conclusory. This Court finds that the ALJ adequately supported this persuasiveness finding. As other parts of the ALJ's opinion demonstrate, the degree of pain alleged was inconsistent with the record, and the record did not support Plaintiff having impairments causing her to miss work to such a degree (Tr. 23-24). *See* 20 C.F.R. § 404.1520c(c)(2). Indeed, as noted by the ALJ and observed from the record, Plaintiff's statements and much of the opinion evidence supported that Plaintiff could perform light or

14

sedentary work without any indication of absenteeism. (Tr. 21, 27, 704, 889, 920-21, 925, 929.) As to supportability, the ALJ considered that Dr. Amarnek's opinion was not supported by his notes (Tr. 26), which are part of the record and do not include any consistent reference to a need for 20%-time off work. *See* 20 C.F.R. § 404.1520c(c)(1); *see also Eberhardt*, 2022 WL 612397, at *4. Thus, the record adequately supports the ALJ's finding that Dr. Amarnek's proposed limitation was not persuasive, *see Biestek*, 139 S. Ct. at 1154, and this Court will not reweigh the evidence, *see Renstrom*, 680 F.3d at 1064.

Sitting: Finally, the ALJ found unpersuasive Dr. Amarnek's opinion that Plaintiff could sit for only 90 minutes at a time, as his opinion was neither supported by his treatment notes nor consistent with the overall record. (Tr. 25.) To support this finding, the ALJ reviewed: Plaintiff's subjective complaints of low back and hip pain while sitting, including her claim that she could only sit for 15 minutes at a time; medical records showing only mild hip arthritis and no radiculopathy expected to cause such pain; treatment records showing conservative over-the-counter treatment for the pain; and examination findings from January 17, 2023, showing, *inter alia*, no obvious asymmetry of the bilateral lower extremities, no area of tenderness except minimally over the lumbar spine and on right SI joint and hip, and full range of motion with minimal pain. (Tr. 24-25.) The ALJ further explained that Dr. Amarnek was a podiatrist, so his opinion regarding Plaintiff's ability to sit was not persuasive, particularly in light of the aforementioned conflicting evidence and objective clinical findings. (Tr. 25.)

Plaintiff argues that the ALJ's persuasiveness finding is not supported by the record, and that Dr. Amarnek's opinion as a podiatrist was relevant to her "ability to not be on [her] feet." (ECF No. 18 at 8.) This Court disagrees and finds that the ALJ properly supported this persuasiveness finding by citing the above evidence. Throughout the decision, the ALJ addressed

Plaintiff's later developed sitting complaints and properly noted medical evidence, opinions, and findings that were inconsistent with the allegation, including medical opinions that Plaintiff could work at a sedentary level without such sitting restrictions. (Tr. 20-21, 24-27, 705-07, 715, 933, 943-48, 1226-30.) Specifically, the ALJ considered the consistency of the opinion with plaintiff's subjective complaints, medical and treatment records, and examination findings. *See* 20 C.F.R. § 404.1520c(c)(2). The ALJ also considered the supportability of Dr. Amarnek's opinion, noting that it was not supported by his notes as reviewed earlier in the ALJ's opinion. *See* 20 C.F.R. § 404.1520c(c)(1); *see also Eberhardt*, 2022 WL 612397, at *4. Moreover, contrary to Plaintiff's argument, the ALJ properly considered Dr. Amarnek's specialty as a podiatrist less persuasive regarding sitting restrictions, as the record shows that Plaintiff's sitting restriction was necessitated by low back and hip pain, not foot pain (Tr. 24-25, 1226-30, 1324-25). *See* 20 C.F.R. § 404.1520c(c)(4) (setting forth specialization as a factor for ALJ to consider in persuasiveness determination). For all these reasons, the record adequately supports the ALJ's persuasiveness finding as to the sitting limitation. *See Biestek*, 139 S. Ct. at 1154.

### C. ALJ's Evaluation of Plaintiff's Subjective Complaints

Plaintiff next argues that the ALJ failed to properly evaluate her subjective pain complaints, because the ALJ improperly found some complaints (including back and hip pain and corresponding limits on walking, standing, and sitting) not supported by medical evidence. She asserts that the ALJ's decision lacked consideration of Plaintiff's work history; daily activities; the duration, frequency, and intensity of her pain; the dosage, effectiveness, and side effects of her medications; or the precipitating and aggravating factors. (ECF No. 18 at 8-11.)

The Court defers to the ALJ's determinations regarding Plaintiff's subjective complaints if they are supported by good reasons and substantial evidence. *Schwandt v. Berryhill*, 926 F.3d

1004, 1012 (8th Cir. 2019) (citing *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016). "An ALJ may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Schwandt*, 926 F.3d at 1012 (quoting *Julin*, 826 F.3d at 1086). "When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions." *Schwandt*, 926 F.3d at 1012 (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). "[A]n ALJ need not explicitly discuss each [of the above] factor[s]." *Schwandt*, 926 F.3d at 1012 (citing *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011).

After reviewing the record, this Court finds that the ALJ properly supported the finding that Plaintiff's complaints concerning intensity, persistence, and the limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Throughout the decision, the ALJ compared in detail Plaintiff's complaints from her testimony, functional reports, and treatment records, with corresponding examination findings and diagnostic imaging, explaining that the objective findings were not always consistent with Plaintiff's complaints. (Tr. 18-27.) As relevant here, the ALJ considered Plaintiff's complaints of right leg weakness, pain, tingling, and numbness; inconsistent complaints related to her ability to stand and walk; and complaints that she experienced increased pain with extended sitting, in conjunction with, *inter alia*, medical records demonstrating no radiculopathy, only mild hip arthritis, no obvious asymmetry of the bilateral lower extremities, normal gait, and conservative treatment. (Tr. 18, 22-25.) In doing so, the ALJ adequately supported her conclusions with good reasons and

substantial evidence, not only finding the severity of Plaintiff's complaints unsubstantiated by the record, but also finding that the medical evidence conflicted with the severity of Plaintiff's complaints. *See Schwandt*, 926 F.3d at 1012 (ALJ can discredit Plaintiff's complaints if they are inconsistent with entire record); *see also Twyford v. Comm'r*, 929 F.3d 512, 517-18 (8th Cir. 2019) ("While an ALJ is not free to disregard subjective complaints merely because there is no other evidence in support of the complaints, she may choose to disbelieve those subjective reports because there are inherent inconsistencies or other circumstances that cause the ALJ to question the reliability of the subjective reports.")

As to the ALJ's consideration of all relevant factors, the ALJ explicitly considered the following in examining Plaintiff's complaints: medical evidence as discussed above (Tr. 18-27); evidence of Plaintiff's daily activities, including that she was fully functional in caring for herself (except as limited by foot pain), she required assistance with some household chores and shopping, and she enjoyed visiting friends (Tr. 19, 23-24); evidence of the duration, frequency, and intensity of Plaintiff's feet, neck, back, hip, and leg pain (Tr. 21-27); evidence of precipitating and aggravating factors, including standing, walking, and sitting (*Id.*); evidence regarding the nature and effect of Plaintiff's medication (Tr. 25, 26); and Plaintiff's functional restrictions as to, inter alia, standing, walking, and sitting (Tr. 21-27). *See Polaski*, 739 F.2d at 1322. The only factor not explicitly addressed in the ALJ's analyses of Plaintiff's subjective complaints was her work history; however, the ALJ acknowledged that Plaintiff's work history exceeded sedentary work (Tr. 28), and the ALJ did not have to explicitly discuss each factor, *see Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004). Ultimately, Plaintiff fails to point to any evidence that the ALJ did not consider, and the Court will not reweigh the evidence. *See Renstrom*, 680 F.3d at 1064.

### D.  RFC Determination

Finally, Plaintiff argues that the RFC is not supported by substantial evidence, asserting that: the ALJ relied too heavily on the opinions of Dr. James Weiss, a non-examining, consultive physician, who issued his report over 24 months before the second hearing; the ALJ erred in applying more weight to Dr. Weiss's report than Dr. Amarnek's report, as he was her treating physician; the ALJ improperly interpreted medical evidence to find that Plaintiff had severe asthma; and the ALJ improperly inferred Plaintiff's RFC based upon her interpretation of the medical evidence. (ECF No. 18 at 11-13.)

This Court finds that the RFC determination is supported by substantial evidence. *Biestek*, 139 S. Ct. at 1154. The ALJ did not base the RFC on her own interpretation of the evidence or one non-examining, consultive physician's report; instead, she considered multiple medical opinions, objective medical evidence, Plaintiff's activities of daily life, and Plaintiff's own statements that she could perform work consistent with a sedentary RFC (Tr. 20-28, 701-02, 704, 707, 889, 920-21, 925, 929). *See Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022) (RFC determination is based on all relevant evidence, including the medical records, observations of treating physicians and others, and claimant's subjective complaints). For example, Plaintiff's treating podiatrist, Dr. Amarnek, opined on multiple occasions that Plaintiff was capable of performing sedentary work. (Tr. 704, 925.) Moreover, the ALJ relied on medical evidence to support the RFC findings that Plaintiff required a climbing limitation and was capable of standing and/or walking for 2 hours, including, *inter alia*, a physical therapy examination report and Plaintiff's own statements. (Tr. 21-23, 721, 919.) Thus, the ALJ's conclusion that Plaintiff remained capable of performing a limited range of sedentary work is well within the "zone of choice." *See Travis v. Astrue*, 477 F.3d

1037, 1042 (8th Cir. 2007) ("As there is conflicting evidence on the record, the ALJ's determination . . . does not lie outside the available zone of choice.").

Further, the ALJ did not improperly rely on the opinion of consultive physician Dr. Weiss, as the date of Weiss's decision goes to the weight of his opinion, the ALJ found Dr. Weiss's opinion unpersuasive (as discussed *supra* at 8-9), and the ALJ's RFC determination was not consistent with Dr. Weiss's opinion that Plaintiff was capable of medium work and could occasionally climb. (Tr. 28.) Plaintiff's argument that the ALJ improperly relied on Dr. Weiss's opinion over the opinion of her treating physician similarly fails because the ALJ explicitly found Dr. Weiss's opinion unpersuasive; Dr. Amarnek opined to a sedentary work level consistent with the RFC; treating physicians' opinions are no longer automatically afforded extra weight when found unpersuasive based primarily on consistency and supportability; and as addressed earlier, the ALJ adequately evaluated Dr. Amarnek's opinions. *See Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 896-98 (11th Cir. 2022) (revised medical-opinion regulations are valid, and abrogate precedent requiring deference to treating physicians' opinions); *McCoy v. Saul*, No. 4:19-CV-00704-NKL, 2020 WL 3412234, at *9 (W.D. Mo. June 22, 2020) (citing 20 C.F.R. § 404.1520c(a)) ("The new regulations plainly prioritize consistency and supportability as the 'most important factors' and explicitly state that an ALJ 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources.'").

Finally, Plaintiff fails to demonstrate that the ALJ improperly found that she had a severe asthma impairment and included environmental limitations in the RFC to avoid asthma exacerbations, as these findings are supported by Plaintiff's own reports and medical records showing asthma as one of her documented conditions (Tr. 28, 77, 81, 87, 94, 104, 266, 625-26,

730, 734, 856). *See Biestek.* 139 S. Ct. at 1154 (Court affirms ALJ's decision if administrative record contains sufficient evidence to support the ALJ's factual findings). As the ALJ explained, even though Plaintiff's medical records did not show exacerbations or complications, Plaintiff smoked, and her asthma was severe when considered with her musculoskeletal impairments as the ALJ detailed throughout the opinion (Tr. 28). *See id.* Moreover, there is no apparent injury from the ALJ's findings related to asthma, as Plaintiff alleged the condition as a disabling impairment, and the ALJ's inclusion of environmental limitations was consistent with the relief sought by Plaintiff.

## V.    CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

**IT IS FURTHER ORDERED** that Frank Bisignano shall be substituted for Martin O'Malley as the Defendant in this suit pursuant to Fed. R. Civ. P. 25(d).


_____

JOSEPH S. DUEKER
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of July 2025.